IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RALPH HALL and ANN HALL;                                    PLAINTIFFS
JOE CAPLE and SANDRA CAPLE;
JOHN MORGAN and MESHA MORGAN;
JOHN KETTLES and SHERRIE KETTLES;
CHARLES TABER and REBECCA TABER;
ANDREW CALHOUN and SHANNON
CALHOUN; DANA BYRD; And
LINDA ZEHNER

V.                              NO. 4:08CV00278 BSM

UNITED STATES ARMY CORPS OF
ENGINEERS, COLONEL MICHAEL C.
WEHR, DISTRICT ENGINEER, Vicksburg
District, U.S. Army Corps of Engineers;
THE FEDERAL EMERGENCY
MANAGEMENT AGENCY, A Division
of The U.S. Department of Homeland
Security; THE CITY OF BRYANT,
ARKANSAS; LARRY MITCHELL,
Mayor for the City of Bryant; and
RICHARD PENN, as Flood plain
Administrator for the City of Bryant,
Arkansas                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Pending before the court are Federal Defendants'[1] Motion to Partially Dismiss

Plaintiffs' Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) [Doc. # 19], and the Separate

---

[1]United States Army Corps of Engineers; Colonel Michael C. Wehr, District Engineer Vicksburg District, U.S. Army Corps of Engineers; and The Federal Emergency Management Agency.

Defendants'[2] (city defendants) Motion for Judgment on the Pleadings [Doc. # 26].

## I. BACKGROUND

A.      The Parties

The fourteen plaintiffs own and reside on property located along Lea Circle in Bryant, Saline County, Arkansas.  Their property is either situated adjacent to and includes Hurricane Creek (the creek) or lies within the creek's flood plain.

Defendant United States Army Corps of Engineers (COE) is an agency within the United States Department of the Army.  The COE oversees the construction, management, and operation of certain water resources in the United States, including the creek.  The creek is subject to the jurisdiction of the COE's Vicksburg, Mississippi District (Vicksburg District).

Defendant Colonel Michael C. Wehr is the District Engineer for the Vicksburg District.   He is responsible for issuing permits that implement the COE's policies, procedures, and requirements.  He also issues permits that implement the procedures and requirements of the applicable statutes and regulations regarding certain water resources and the water resources owned and operated by the COE within the Vicksburg District.

Defendant, the Federal Emergency Management Agency (FEMA), is an agency within the United States Department of Homeland Security.  FEMA's responsibilities include the

---

[2]Larry Mitchell and Richard Penn in their official capacities, and the City of Bryant, Arkansas.

management and oversight of flood plains and the Flood Insurance Program in the United States.

Defendant City of Bryant (the city) is a municipal corporation under the laws of the State of Arkansas that is located in Saline County, Arkansas.  The city participates in the National Flood Insurance Program (NFIP) administered by FEMA.  The city has enacted an ordinance entitled the Flood Damage Prevention Ordinance along with other ordinances that are relative to flood plains.

Defendant Larry Mitchell is the city's mayor.  As part of his mayoral responsibilities, he oversees and enforces compliance by the city with the laws and regulations of the United States, the State of Arkansas, and the ordinances, policies, procedures, and agreements of the city.

Defendant Richard Penn is the city's engineer.  He also serves as the city's Flood Plain Administrator.  As flood plain administrator, he has responsibilities under various city ordinance agreements.

B.    Facts

In late 2007, the city acquired approximately 106 acres of land, known as the Bishop Property, located along the west bank of the creek.  The city plans to develop a city park, Bishop Park, that would include ball fields, soccer fields, and other amenities.  Portions of the Bishop property [hereafter referred to as the park property/site] are within the creek's one-hundred year flood plain and approximately half of the park property sits in the creek's

floodway.  Because fill and dredge work needed to be performed along the creek's west bank, the city submitted an application to the COE for a permit to conduct the fill and dredge work under Nationwide Permit No. 39 (NWP 39).   On October 10, 2007, the COE's Vicksburg district issued a verification of applicability of NWP 39 to the city.  Following the issuance of NWP 39, the city began excavating and dredging soil from portions of the property.

On March 5, 2008, defendant Penn received a visit from Michael Borengasser of the Arkansas Natural Resources Commission (ANRC).  During the visit, Borengasser informed Penn that located within soccer field E1's boundary is a relief stream bed and that the stream bed is part of the creek's regulatory floodway.  Following Borengasser's visit, Penn drafted a memo dated March 7, 2008, to Mayor Mitchell. In the memo, Penn informed Mayor Mitchell that he directed the engineer to conduct a flood study of the creek "to confirm pre- and post-construction conditions to establish a No Rise certification of the Bishop Park project."  Penn also informed Mayor Mitchell that construction on soccer field E1 should cease until the study was completed.  He advised that, should the study reveal that the design of the soccer field or any other feature of the park have caused a rise in the creek's "Base Flood Elevation," an application to FEMA for a conditional letter of "Map Revision" would need to be made.  He also advised that, before construction could resume, approval to proceed from FEMA would be needed.  The study found no negative impact on the creek's flood level.

Plaintiffs reside and own properties that sit along the creek's east bank directly across from the park property.  Because portions of the plaintiffs' properties also sit in the creek's flood plain, plaintiffs are eligible for flood insurance under the NFIP.  In March and April 2008, two separate storm systems dumped five to seven inches of rain on the area.  The resulting rains caused portions of the plaintiffs' properties to flood.  The flood waters included water from the creek.

Plaintiffs now allege that continued development of the park property will cause irreparable harm to the flood plain, the wetlands, and other environmentally sensitive portions of the creek, and constitutes an imminent and substantial threat through flooding to the plaintiffs' respective properties, safety and health, and the use and enjoyment of such properties by the plaintiffs and the surrounding area.  Plaintiffs seek declaratory relief and injunctive relief against defendants.  They allege that the defendants committed the following acts:

- The COE and Colonel Wehr failed to comply with section 404 of the Federal Clean Water Act, 33 U.S.C. § 1344 and regulations issued by the COE at 33 CFR Parts 320 through 330 and other statutes and regulations regarding the verification and approval of a NWP 39 to the city for dredging and filling at the park.

- FEMA failed to comply with the requirements of 44 CFR Part 9 regarding flood plain management and protection of wetlands in approving the dredging and filling activities at the park and failed to terminate the activities when it became apparent that FEMA's regulations were violated.

- The City failed to comply with the requirements of city

ordinances No. 92-34, 95-31, and 2002-03 regarding flood-plain management and protection of property adjoining streams, rivers, and water courses; conducted dredge and fill work without complying with city ordinances and the terms, conditions, and restrictions of NWP 39; violated the city's duties and obligations under Ordinance No. 2002-03 and FEMA regulations, and the requirements of the city's National Flood Plain Insurance Agreement; created a nuisance to the plaintiffs and their respective properties and created a trespass upon the plaintiffs' respective properties.

• Penn violated his duties and obligations under: (1) City Ordinance No. 2002-03, (2) the rules, regulations, and requirements of FEMA; and (3) the requirements of the city's National Flood Plain Insurance Program Agreement.

C.   Claims

1.   Count 1– Claims against the COE

Plaintiffs allege that in verifying the applicability of NWP 39 and its proposed use by the city, the COE acted arbitrarily and capriciously and contrary to the law in that:

(a) NWP 39 is not applicable to the activities proposed or conducted by the city; (b) the COE failed to conduct a public interest review or any other assessment of the potential effect the park project would have on the area's environment; (c) the COE failed to adequately examine the city's application for NWP 39 to determine whether the park project would potentially have more than a minimal effect on the environment, including plaintiff's property; (d) the COE failed to coordinate with FEMA to ensure compliance with Executive Orders 11988 and 11990; (e) the COE failed to inspect the proposed park site to determine the presence and location of the relief stream bed.

Plaintiffs asks that the court order and direct the COE to revoke NWP 39 and direct that the city cease all activity under NWP 39; order the city to remove all fill material placed in the creek's flood plain and floodway and to apply for an individual permit pursuant to COE

6

regulations.

      2.      <u>Count 2 – Claims against FEMA</u>

Plaintiffs allege that, upon learning of the city's fill activities at the park site, FEMA failed to order and direct the city to cease all fill activities at the site, to immediately remove all fill material placed in the flood plain and floodway of the creek, and to apply for a permit for such activities pursuant to FEMA regulations.  Plaintiffs ask that the court order FEMA to order and direct the city to immediately remove all fill material placed in the creek's flood plain and floodway and to apply for a permit pursuant to FEMA regulations.

      3.      <u>Count 3 – Claims against the City of Bryant, Mayor Larry Mitchell, and Richard T. Penn</u>

Plaintiffs allege that the city failed to comply with the terms and provisions of the city's ordinances relative to the alteration and fill of flood plains and floodways, specifically Ordinance No. 95-31.  They also allege that the city acting through Mayor Mitchell and Penn committed the following acts and omissions:

> (a) filling a flood plain and floodway without having conducted an adequate assessment of the potential consequences of the flood plain and floodway including the potential for flooding of the plaintiffs' properties; (b) violating the terms and conditions of the NWP by failing to maintain the pre-construction course, condition, capacity and location of the stream channels and storm water management; and restricting and impeding the passage of high flows of water on the creek; (c) failing to notify FEMA of the proposed fill activities in the flood plain prior to commencing with the fill of the flood plain; (d) failing to comply with applicable FEMA approved state and local flood plain management requirements as required by NWP 39 and applicable COE and FEMA regulations; (f) failing to cease fill activities at the park site and in failing to remove fill materials placed on the site as

7

directed by Penn; (g) caused conditions to exist on the park site that constitute a common-law nuisance under the laws of the State of Arkansas on the property of the plaintiffs in that such conditions caused flooding on the plaintiffs' properties, and threatened the continued existence of the buildings and other structures on such property; (h) caused conditions to exist on the park site that constitute a common law trespass under the laws of the State of Arkansas on the plaintiffs' properties in that such conditions caused flooding of the plaintiffs' properties, and threatened the continued existence of the buildings and other structures on such property; the safety and health of the plaintiffs; and their continued use and enjoyment of such properties.

They ask that the city, Mayor Mitchell and Penn be ordered and directed to immediately cease placement of fill material on the park site, and to immediately remove all fill material that was placed in the creek's flood plain.

> 4. <u>Count 4 – Claims against Richard T. Penn, Flood Plain Administrator for the City of Bryant</u>

Plaintiffs allege that Penn, as the city's Flood Plain Administrator, failed to comply with the requirements and duties of his position as contained in the city's agreement with FEMA in the following respects:

(a) failing to notify adjacent communities and the ANRC a minimum period of sixty days prior to the city commencing the alteration and relocation of a water course; (B) failing to submit evidence to ANRC of such notifications to FEMA; (c) failing to ensure that the flood-carrying capacity within the altered or relocated portion of the watercourse on the park project was not diminished and that the alteration/relocation did not adversely impact any other lands; (d) failing to enforce the stop-work order that he issued in the March 7, 2008 memo to Mayor Mitchell.

Plaintiffs ask that Penn be ordered and directed to immediately order cessation of the placement of fill material on the park property; to immediately order the removal of the fill

material from the creek's flood plain; and to comply with the requirements of the city's agreement with FEMA.

     5.    <u>Count 5 – Claims against the COE, FEMA, and the City of Bryant for "taking" of plaintiffs' property</u>

Plaintiffs assert that the past actions of the COE, FEMA, and the city in applying for, approving, and allowing the placement of fill material in the creek's flood plain have resulted in the alteration of the creek's flood plain and thereby resulted in the encroachment of flood waters onto the plaintiffs' properties. They believe that the encroachment and the threat of flooding on the plaintiffs' properties constitutes a taking or inverse condemnation of the plaintiffs' properties without due process of law and without just compensation as required by the United States and Arkansas Constitutions. Plaintiffs state that unless the fill material is removed and the creek's flood plain and watercourses restored, plaintiffs should be afforded a trial by jury on the issue of such taking, and awarded damages from the COE, FEMA, and the city for the fair market value of their respective properties, plus additional sums as will make plaintiffs whole.

     6.    <u>Count 6 – Claims against all defendants for attorney fees</u>

Plaintiffs assert that they are entitled to attorney's fees and costs under the Equal Access to Justice Act and all other applicable statutory law allowing attorney's fees from all the defendants.

## II. MOTION TO DISMISS

The federal defendants have filed a partial motion to dismiss. They seek to dismiss

counts two, five, and six of plaintiffs' first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

A.      Standard for motion to dismiss

  1.      Rule 12(b)(1)

Rule 12(b)(1) allows a district court to dismiss a complaint for lack of subject matter jurisdiction.  The burden of proving subject matter jurisdiction falls on the plaintiff.  *V S Ltd. P'ship v. Dep't of Housing & Urban Dev.*, 235 F.3d 1109, *1112 (8th Cir. 2000).  In order for the court to dismiss a claim under Rule 12(b)(1), the opposing party must successfully challenge the claim on its face or the factual truthfulness of its averments.  *D.L. v. Waukee Cmty. Sch. Dist.*, __ F. Supp. 2d __, *3 (S.D. Iowa Sept. 26, 2008).  A facial attack restricts the court to review the face of the pleadings to determine whether the plaintiff has alleged a basis of subject matter jurisdiction.  *Brooks v. Wiesz*, 572 F. Supp. 2d 1134, *1136 (D.N.D. Aug. 26, 2008).  Facial attacks under Rule 12(b)(1) are subject to the same standard as a motion to dismiss under Rule 12(b)(6).  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, *698 (8th Cir. 2003).  Factual attacks, however, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.  *Brooks*, 572 F. Supp. 2d at *1136.

  2.      Rule 12(b)(6)

A district court considering a motion to dismiss under Rule 12(b)(6) accepts all factual allegations in the complaint as true.  *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, *787 (8th Cir.

2007).  The complaint is to be liberally construed in a light most favorable to the plaintiff. *Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, *1059 (8th Cir. 2003); *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862, *864 (8th Cir. 1999).  The complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all the necessary factual allegations.  *D.L. v. Waukee Cmty. Sch. Dist.*, __ F. Supp. 2d at *3.  Thus, a well-pleaded complaint may proceed even if it appears that recovery is very remote and unlikely.  *Id.*

B.    Count 2

Federal defendants first assert that count two of plaintiffs' amended complaint fails to state a claim against FEMA and should be dismissed pursuant to Rule 12(b)(6).  Plaintiffs allege that FEMA failed to comply with the requirements of 44 C.F.R. Part 9 regarding flood plain management and the protection of wetlands when it approved the dredging and filling at the park site and in failing to terminate the dredging and filling upon learning that FEMA's regulations were violated.  The federal defendants assert that none of the regulations plaintiffs claim FEMA violated are applicable to the facts of this case and, therefore, the regulations found at 44 C.F.R. Part 9, are not relevant to the facts of this case.

1.    44 C.F.R. Part 9

Part 9 of title 44 of the Code of Federal Regulations sets forth the policies and procedures FEMA is to follow in its implementation and enforcement of Executive Order

11,988[3] and Executive Order 11,990.[4]  The regulations found in part 9, only apply to actions by FEMA that "have the potential to affect flood plains or wetlands or their occupants or which are subject to potential harm by location in flood plains or wetlands."  44 C.F.R. § 9.5(a).  Here, FEMA has not taken any action under Part 9, so plaintiffs cannot hold FEMA liable for failing to comply with 44 C.F.R. Part 9.

    2.    The National Flood Insurance Program

    Federal defendants state that FEMA's only connection to the park project is through its management of the NFIP, codified at 42 U.S.C. § 4001 *et seq*.  The National Flood Insurance Act (NFIA) of 1968 was enacted by Title XIII of the Housing and Urban Development Act of 1968 to provide previously unavailable flood insurance protection to property owners in flood prone areas.  44 C.F.R. § 59.2.  To carry out this purpose, the NFIP was established.  *See Audler v. CBC Innovis, Inc.*, 519 F.3d 239, *245 (5th Cir. 2008);  42 U.S.C.A. § 4011 (West 2003).  The NFIP is a federal program, administered and implemented by FEMA, which enables private property owners to purchase federal flood insurance.  *Florida Key Deer v. Stickney*, 864 F. Supp. 1222, *1229 (S.D. Fla. 1994).  The purpose of the NFIP is to make flood insurance available on a nationwide basis through the cooperative efforts of the federal government and the private insurance industry and to provide flood insurance based upon workable methods of pooling risks, minimizing costs,

---

[3]Executive Order 11,988 provides for flood plain management.

[4]Executive Order 11,990 provides for the protection of wetlands.

and distributing the burden equitably among those who are protected by flood insurance and the general public.  42 U.S.C.A. § 4001(d) (West 2003); *National Wildlife Fed'n v. Fed. Emergency Mgmt. Agency*, 345 F. Supp. 2d 1151, *1154 (W.D. Wash. 2004).

The Flood Disaster Protection Act of 1973 requires the purchase of flood insurance as a condition for receiving any form of federal or federally-related financial assistance for acquisition or construction purposes with respect to insurable buildings and homes within identified special flood hazard areas that are located within communities that participate in the NFIP.  44 C.F.R. § 59.2(a).  In order for a community to qualify for the sale of federally subsidized flood insurance, the community must adopt and submit to FEMA flood plain management regulations that meet the minimum standards established by FEMA.  44 C.F.R. § 59.2(b); *see Florida Key Deer*, 864 F. Supp. at *1229.  The regulations must also be designed to avoid future flood damages.  44 C.F.R. § 59.2(b); *see Florida Key Deer*, 864 F. Supp. at *1229.   If a community fails to adequately enforce its flood plain management regulations, the community will be subject to probation and possible suspension from the NFIP.  *See* 44 C.F.R. § 59.24(b) & (c).  The NFIP does not provide a private right of action for the violation of its terms.  *United States v. St. Bernard Parish*, 756 F.2d 1116, *1123 (5th Cir. 1985) (holding that the NFIP does not provide the United States a private right of action to sue a community for flood damage caused by the communities violation of its obligation to adopt and enforce flood control measures consistent with its participation in the NFIP); *Virgin Islands Tree Boa v. Witt*, 918 F. Supp. 879, *902 (D. V.I. 1996) ( the plaintiffs alleged

FEMA had violated its regulations regarding flood plain protection and wetlands, and the court held that the NFIP does not provide a private right of action); *Brill v. Northern Calif. Savings & Loan Ass'n*, 555 F. Supp. 566, *573 (D.C. Cal. 1982) (under the NFIP there is no private right for damages); *Duhon v. Trustmark Bank*, No. Civ. A. 1:06-CV-718LG (S.D. Miss. Feb. 25, 2007) (memorandum opinion and order) (holding that the NFIP does not create a private cause of action by a borrower for an alleged violation of the flood zone determination and notification requirements of the NFIA).

3.     The Administrative Procedure Act

Plaintiffs argue that the Administrative Procedure Act (APA) allows them to maintain a cause of action against FEMA for violation of its statutory duties.  Section 702 of the APA provides that a person suffering a legal wrong because of agency action or adversely affected or aggrieved by agency action "is entitled to judicial review thereof."  5 U.S.C.A. § 702 (West 2007).  A plaintiff claiming a right to sue under the APA must identify some agency action that affects the plaintiff in the specified fashion.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, *882, 110 S. Ct. 3177, **3185 (1990); *Western Shoshone Bus. Council, For and on Behalf of Western Shoshone Tribe of the Duck Valley Reservation v. Babbit*, 1 F.3d 1052, *1055 (10th Cir. 1993); *Veterans for Common Sense v. Peake*, 563 F. Supp. 2d 1049, *1057 (N.D. Cal. 2008).  Next, the plaintiff must show that this agency action has caused the plaintiff to suffer a legal wrong or that the plaintiff has been adversely affected or aggrieved by the agency action.  *Lujan*, 497 U.S. at *883, 110 S. Ct. at **3186; *Western Shoshone*, 1

F.3d at *1055; *Veterans for Common Sense*, 563 F. Supp. 2d at *1057. Section 702 does not create substantive rights. *El Rescate Legal Servs. Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, *753 (9th Cir. 1991).

When review is sought not pursuant to specific authorization in a substantive statute, but only under the general review provisions of the APA, the agency action in question must be a final agency action. *Lujan*, 497 U.S. at *882, 110 S. Ct. at **3185. "Agency action" is the "whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Veterans for Common Sense*, 563 F. Supp. 2d at *1057. "Agency rule" is defined as the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy. *Id*. An agency action is final when (1) the action marks the consummation of the agency's decision making process– it must not be of a merely tentative or interlocutory nature and (2) the action is one by which rights or obligations have been determined, or from which legal consequences will flow. *Veterans for Common Sense,* 563 F. Supp. 2d. at *1059.

Plaintiffs state that the NFIP involves the promulgation of regulations, providing insurance, and actions that indirectly cause modifications of the land and water and thus, the NFIP falls within the broad definition of agency action. A broad agency program is not a final agency action within the meaning of the APA. *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, *813 (8th Cir. 2006).

Federal defendants also state that plaintiffs cannot show an alleged failure to act by

FEMA.  Section 706 of the APA provides relief for a failure to act, in that § 706 allows the reviewing court to compel agency action that is unlawfully withheld or unreasonably delayed. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, *62, 124 S. Ct. 2373, **2378 (2004).  However, a claim under § 706 can only proceed when a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.  *Id*. at *64, 124 S. Ct. at **2380; *Kaufman v. Mukasey*, 524 F.3d 1334, *1338 (D. C. Cir. 2008).  Plaintiffs fail to identify a discrete agency action that FEMA was required to take and are, therefore, unable to proceed under § 706.

Plaintiffs' count two must be dismissed.  First, the NFIP does not provide a private right of action.  Second, plaintiffs fail to identify an agency action taken by FEMA or that FEMA was required to take.  The court finds that the plaintiffs fail to state a claim against FEMA and dismisses count two, pursuant to Rule 12(b)(6).

C.    Count 5

Next, the federal defendants assert that count five of plaintiffs' amended complaint should be dismissed pursuant to Rule 12(b)(1) because the claim involves a Fifth Amendment taking claim that exceeds $10,000 and, as such, must be brought before the United States Court of Federal Claims.  They also assert that, under the facts of this case, FEMA's operation of the National Flood Insurance Program, cannot result in a taking and, therefore, plaintiffs' count five also fails to state a claim against FEMA and can be dismissed under Rule 12(b)(6).

Plaintiffs agree that their count five should be dismissed.  The court, therefore, dismisses plaintiffs' count five without prejudice.

D.    Count 6

The federal defendants also assert that plaintiffs' claim for attorney's fees in count six, as to FEMA, should be dismissed.  Because the plaintiffs fails to state a claim against FEMA, count 6 is dismissed as it pertains to FEMA.

### III.  MOTION FOR JUDGMENT ON THE PLEADINGS

Separate defendants (the city defendants) have moved for judgment on the pleadings. They state that the plaintiffs fail to cite statutory authority conferring a private right of action unto the plaintiffs to enforce federal statutes and regulations related to flood plain management or the applicability of NWP 39.

A.    Standard for judgment on the pleadings

Rule 12(c) of the Federal Rules of Civil Procedure states that, after the pleadings are closed, a party may move for judgment on the pleadings.  Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.  *Syverson v. FirePond, Inc.*, 383 F.3d 745, *749 (8th Cir. 2004); *National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, *428 (8th Cir. 1993).  An issue of fact is deemed to be material if the outcome of the case might be altered by its resolution one way rather than another.  *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am.*, 627 F.2d 853, *855 (8th Cir.

1980).  A district court confronted with a motion for judgment on the pleadings is required to construe the factual allegations of the nonmoving party as true and draw all reasonable inferences from those facts in favor of the nonmoving party.  *Id*.

B.      Whether the plaintiffs have a private right of action against the separate defendants.

The city defendants assert that neither the Clean Water Act (CWA) nor the NFIP permit a private right of action for a city's failure to comply with the statutes' provisions and related federal regulations.  They also assert that the statutes do not confer rights upon plaintiffs so that they may bring suit under 42 U.S.C. § 1983.

1.      The Clean Water Act

The Clean Water Act (CWA) was passed in 1972 to restore and maintain the chemical, physical, and biological integrity of the nation's waters.  33 U.S.C.A. §1251(a) (West 2001); *Coeur D'Alene Lake v. Kiebert*, 790 F. Supp. 998, *1007 (D. Idaho 1992); *Fiscella v. Fiscella*, 717 F. Supp. 1143, *1145 (E.D. Va. 1989).  Under 33 U.S.C. §§ 1311 and 1362, any discharge of dredge or fill materials into navigable waters or waters of the United States is forbidden unless authorized by a permit issued by the COE pursuant to § 404 of the CWA, codified at 33 U.S.C. § 1344.  *Fiscella*, 717 F. Supp. at *1145.  Congress gave the COE the responsibility of regulating the discharge of dredge or fill material into navigable waters in recognition of the COE's historical role under § 10 of the Rivers and Harbors Act of 1899 as the permitting agency for dredge and fill activities in the nation's navigable waters.  *Northwest Envtl. Defense Ctr. v. U.S. Army Corps of Eng'rs*, 118 F. Supp.

18

2d 1115, *1117 (D. Or. 2000).  Although primary responsibility for regulating the discharge

of dredge and fill material into navigable waters lies with the COE, Congress directed the

Environmental Protection Agency to promulgate guidelines for the COE's consideration of

dredge and fill permit applications.  *Id.*

Section 404 of the CWA allows the COE to issue permits, after notice and opportunity

for public hearing, for the discharge of dredge or fill material into navigable.  *Coeur

D'Alene*, 790 F. Supp. at *1007.  Once a § 404 permit has been issued, the permittee's

obligations to comply with the regulatory scheme of the CWA is determined by referring to

the terms and conditions of the § 404 permit. *Id.*

The CWA's citizen suit provisions are found in 33 U.S.C. § 1365 (West 2001). *Board

of Trustees of Painesville Twp. v. City of Painesville, Ohio*, 200 F.3d 396, *399 (6th Cir.

1999); *Fiscella*, 717 F. Supp. at *1146.  Section 1365 is the sole avenue of relief for private

litigants seeking to enforce certain enumerated portions of the CWA. *City of Painesville*, 200

F.3d at *399.  Section 1365 provides, in relevant part:

> (a) Authorization; jurisdiction
>
> Except as provided in subsection (b) of this section and section
> 1319(g)(6) of this title, any citizen may commence a civil action on his
> own behalf--
>
>> (1) against any person (including (i) the United States, and (ii)
>> any other governmental instrumentality or agency to the extent
>> permitted by the eleventh amendment to the Constitution) who
>> is alleged to be in violation of (A) an effluent standard or
>> limitation under this chapter or (B) an order issued by the
>> Administrator or a State with respect to such a standard or

limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

(b) Notice

No action may be commenced--

(1) under subsection (a)(1) of this section--

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

20

Plaintiffs are not asserting that the city defendants have violated an effluent standard or limitation. Therefore, § 1365 does not provide plaintiffs with a remedy against the city defendants.

The question, however, remains as to whether plaintiffs have an implied private right of action. In *Middlesex Country Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S. Ct. 2615 (1981), the United States Supreme Court addressed whether the CWA implies a private right of action independent of § 1365. After looking at the legislative intent, the Court held that an implied private right of action was not contemplated under § 1365. *Id.* at *18, 101 S. Ct. at **2625. The court next addressed whether suit could be brought under the CWA by virtue of a right created by § 1983. The Court held that Congress foreclosed a § 1983 remedy under the CWA. *Id.* at *21, 101 S. Ct. at **2627; *see City of Las Vegas, Nev. v. Clark County, Nev.*, 755 F.2d 697, *703 (9th Cir. 1985).

Thus, according to the *Middlesex* case, there is no private right of action under the CWA. *Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass., Inc.*, 352 F.3d 33, *37 (1st Cir. 2003); *Consol. Edison Co. of N.Y., Inc. v. N.Y. State Dep't of Envtl. Conservation*, 726 F. Supp. 1404, *1409 (S.D.N.Y. 1989). The CWA does not confer upon the plaintiffs a private right of action and nor can they bring suit against the city defendants under the CWA by virtue of § 1983.

2.      NFIA/NFIP

As set out in the discussion of the NFIP regarding the partial motion to dismiss, the

NFIA/NFIP does not provide a private right of action for the violation of its terms. The question remains, however, as to whether plaintiffs have a cause of action under § 1983. Section 1983 provides a remedy only for the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States. *Gonzaga Univ. v. Doe*, 536 U.S. 273, *283, 122 S. Ct. 2268, **2275 (2002). Accordingly, it is rights, not the broader or vaguer benefits or interests that may be enforced under the authority of § 1983. Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes. *Id*. at *284, 122 S. Ct. at **2276. Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983. The initial inquiry in determining whether a statute confers any right at all is to determine whether or not a statute confers rights on a particular class of persons. *Id*. at *285, 122 S. Ct. at **2276. The statute must focus on an individual entitlement to the asserted federal right, rather than on the aggregate practices or policies of a regulated entity. *Lankford v. Sherman*, 451 F.3d 496, *508-09 (8th Cir. 2006).

Although Congress intended to help borrowers damaged by flooding, "the principle purpose [behind] enacting the NFIP was to reduce, by implementation of adequate land use controls and flood insurance, the massive burden on the federal fisc of the ever increasing federal flood disaster assistance." *Audler*, 519 F.3d at *252 (citing *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 159 (5th Cir. 1981)). The language of the NFIP focuses on the

practices and policies of FEMA, not an individual's entitlement to a federal right. Accordingly, plaintiffs are unable to pursue a violation of the NFIA/NFIP by the city defendants under § 1983.

C.    Supplemental and Pendent Jurisdiction

In response to the city defendants' motion, plaintiffs state that this court has jurisdiction over the city defendants under its supplemental or pendent jurisdiction. In 1990 Congress consolidated and codified the common law doctrines of ancillary and pendent jurisdiction under the title "Supplemental jurisdiction," in 28 U.S.C. §1367. *Motion Control Corp. v. SICK, Inc.*, 354 F.3d 702, *705 (8th Cir. 2003). Section 1367(a) provides, in relevant part, that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a) (West 2006). Claims within an action are part of the same case or controversy if they derive from a common nucleus of operative fact. *OnePoint Solutions, LLC. v. Borchert*, 486 F.3d 342, *350 (8th Cir. 2007). A plaintiff's claims derive from a common nucleus of operative fact if the claims are such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding. *Id*.

Plaintiffs assert that counts three and four of their amended complaint raise state law claims that are so closely connected to their claims in count one that the claims in counts three and four arise out of the same nucleus of operative fact as count one and that plaintiffs

would be expected to try the claims together.  When the CWA and NFIP claims are eliminated from counts three and four, the following claims remain: (1) whether the city failed to comply with the terms and provisions of the city's ordinances relative to the alteration and fill of flood plains; (2) whether the city failed to cease construction as ordered by Penn; (3)  whether the city committed acts that constituted common law nuisance and trespass.

In their reply brief, the city defendants assert that the plaintiffs' nuisance and trespass claims should be dismissed because the city defendants are entitled to statutory immunity. Arkansas Code Annotated section 21-9-301(a) (Repl. 2004), provides that all counties, municipal corporations, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.  The Arkansas courts have consistently held that § 21-9-301 also provides city employees with immunity from civil liability for negligent acts. *City of Fayetteville v. Romine*, 373 Ark. 318, ___ S.W.3d ___ (2008).

Because plaintiffs are only seeking injunctive relief as oppose to damages from the city defendants, the court finds that the city defendants are not entitled to immunity.  The court further finds that the plaintiffs' claims against the city defendants are derived from a common nucleus of operative fact and should be tried with plaintiffs' federal claims.

D.      Attorney's Fees

Lastly, the city defendants assert that the plaintiffs are not entitled to attorney's fees and costs against the city defendants under the Equal Access to Justice Act. The Equal Access to Justice Act, codified at 28 U.S.C. § 2412 (West 2002) provides that a judgment for costs but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction. Section 2412 further provides that a court may award reasonable fees and expenses of attorneys to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. 28 U.S.C.A. § 2412(b).

Because the recovery of costs and fees under the Act are limited to claims involving the United States, its agencies, or agency officials, plaintiffs cannot recover attorney's fees from the city defendants under the Equal Access to Justice Act. The plaintiffs also are unable to recovery attorney's fees from the city defendants under Arkansas law. In Arkansas, attorney's fees are not recoverable in injunction cases. *Arkansas Oklahoma Gas Corp. v. Waelder Oil & Gas, Inc.*, 332 Ark. 548, *550, 966 S.W.2d 259, **260 (1998).

## IV.  CONCLUSIONS

Federal defendants' motion to partially dismiss plaintiffs' amended complaint [Doc. # 19] is granted. The NFIP does not provide the plaintiffs with a private right of actions and plaintiffs' claims against FEMA are thereby dismissed. The court finds that  count two of

the amended complaint should be dismissed in its entirety and that count six of the amended complaint should be partially dismissed.  The parties agree that this court is not the appropriate forum for count five of the amended complaint and that claim is also dismissed in its entirety.

The city defendants' motion for judgment on the pleadings [Doc. # 26] is granted in part and denied in part.  The plaintiffs cannot recover attorney's fees from the city defendants under the Equal Access to Justice Act or Arkansas law, therefore, plaintiffs' claim for attorney's fees against the city defendants is dismissed.  Because the plaintiffs raise state law claims that arise from a common nucleus of operative fact as the plaintiffs' federal claims that portion of the motion for judgment on the pleadings will be denied.

IT IS SO ORDERED this 5th day of November, 2008.


_____
UNITED STATES DISTRICT JUDGE