IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RALPH HALL and ANN HALL;                                                   PLAINTIFFS
JOE CAPLE and SANDRA CAPLE;
JOHN MORGAN and MESHA MORGAN;
JOHN KETTLES and SHERRIE KETTLES;
CHARLES TABER and REBECCA TABER;
ANDREW CALHOUN and SHANNON
CALHOUN; DANA BYRD; And
LINDA ZEHNER

V.                                        NO. 4:08CV00278 BSM

UNITED STATES ARMY CORPS OF
ENGINEERS, COLONEL MICHAEL C.
WEHR, DISTRICT ENGINEER, Vicksburg
District, U.S. Army Corps of Engineers;
THE FEDERAL EMERGENCY
MANAGEMENT AGENCY, A Division
of The U.S. Department of Homeland
Security; THE CITY OF BRYANT,
ARKANSAS; LARRY MITCHELL,
Mayor for the City of Bryant; and
RICHARD PENN, as Floodplain
Administrator for the City of Bryant,
Arkansas                                                                    DEFENDANTS

## ORDER

The plaintiffs and federal defendants[1] have filed competing motions for summary

judgment [Doc. ## 36 and 44].  The federal defendants have also filed a motion to strike

extra-record material submitted with plaintiffs' summary judgment brief [Doc. # 46].  For

---

[1]United States Army Corps of Engineers; Colonel Michael C. Wehr, District
Engineer Vicksburg District, U.S. Army Corps of Engineers

the reasons set forth below, federal defendants' motions to strike extra-record material and

for summary judgment are granted and plaintiffs' motions for summary judgment is denied.

## I.  BACKGROUND

A.  <u>The Clean Water Act</u>

The Clean Water Act (CWA) was passed in 1972.  *Rapano v. U.S.*, 547 U.S. 715,

*722, 126 S. Ct. 2208, **2215 (2006);  *Coeur D'Alene Lake v. Kiebert*, 790 F. Supp. 998,

*1007 (D. Idaho 1992).  The objective of the CWA is "to restore and maintain the chemical,

physical, and biological integrity of the Nation's waters."   33 U.S.C.A. §1251(a) (West

2001); *National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, *1275

(D.C. Cir. 2005); *Coeur D'Alene Lake*, 790 F. Supp. at *1007 (D. Idaho 1992); *Fiscella v.*

*Fiscella*, 717 F. Supp. 1143, *1145 (E.D. Va. 1989).  Under 33 U.S.C. §§ 1311 and 1362,

any discharge of dredge or fill materials into navigable waters or waters of the United States

is forbidden unless authorized by a permit issued by the United States Army Corps of

Engineers (COE) pursuant to § 404 of the CWA, codified at 33 U.S.C. § 1344.  *Fairbanks*

*North Star Borough v. U.S. Army Corps of Eng'rs*, ___ F.3d ___ (9th Cir. Sept. 12, 2008);

*United States v. Marathon Dev. Corp.*, 867 F.2d 96, *98 (1st Cir. 1989);  *Fiscella*, 717 F.

Supp. at *1145.  Congress delegated the responsibility of regulating the discharge of dredge

or fill material into navigable waters to the COE  in recognition of the COE's historical role

under § 10 of the Rivers and Harbors Act of 1899 as the permitting agency for dredge and

fill activities in the nation's navigable waters.  *Northwest Envtl. Defense Ctr v. U.S. Army*

*Corps of Eng'rs*, 118 F. Supp. 2d 1115, *1117 (D. Or. 2000).   Although primary responsibility for regulating the discharge of dredge and fill material into navigable waters lies with the COE, Congress directed the Environmental Protection Agency to promulgate guidelines for the COE's consideration of dredge and fill permit applications.   *Id.*

Section 404 of the CWA allows the COE to issue permits, after notice and opportunity for public hearing, for the discharge of dredge or fill material into navigable waters.   33 U.S.C.A. § 1344 (West 2001); *State of Montanan v. U.S. Envtl. Prot. Agency*, 941 F. Supp. 945, *950 (D. Mont. 1996);   *Coeur D'Alene*, 790 F. Supp. at *1007.   Responsibility for the day-to-day administration of the permitting regime falls to the COE's district and division engineers.   *National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d at *1275.   Once a § 404 permit has been issued, the permittee's obligations to comply with the regulatory scheme of the CWA is determined by referring to the terms and conditions of the § 404 permit. *Coeur D'Alene*, 790 F. Supp. at *1007.

The COE may issue one of two types of permits for the discharge of dredge or fill material, either an individual permit or a general permit.   *Marathon Dev*., 867 F.2d at *98; *Sierra Club v. U.S. Army Corps of Eng'rs*, 464 F. Supp. 2d 1171, *1184 (M.D. Fla. 2006). Individual permits are issued following a case-by-case evaluation of a specific project involving the proposed discharges. 33 C.F.R. § 323.2(g).  This case-by-case evaluation can take up to sixty days. 33 C.F.R. § 325.2(d)(3).  An application for an individual permit must include a complete description of the proposed activity including necessary drawings,

sketches, or plans sufficient for public notice, the location, purpose and need for the proposed activity; the names and addresses of adjoining property owners; the location and dimensions of adjacent structures; and a list of authorizations required by other federal, interstate, state or local agencies.  33 C.F.R. § 325.1(d).  In certain instances, the application must also include a statement describing how impacts to waters of the United States are to be avoided and how any impacts are to compensated for or why compensatory mitigation should not be required.  33 C.F.R. § 325.1(d)(7).  Following submission to the COE, an application for an individual permit will undergo public comment and when necessary be subjected to a public hearing.  33 C.F.R. § 325.2(a).

General permits are issued, after notice and opportunity for public hearing, on a state, regional, or nationwide basis for any category of activities involving discharges of dredged or fill material if the COE determines that the activities in such category are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effects on the environment.  33 U.S.C.A. § 1344; 33 C.F.R. § 323.2(4); *National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d at *1275.  The COE acting through its division or district engineers can propose a new general permit.  *Sierra Club v. U.S. Army Corps of Eng'rs*, 464 F. Supp. 2d at *1185.  The general permit program is the primary method of eliminating unnecessary federal control over activities which do not justify individual control or which are adequately regulated by another agency.  33 C.F.R. § 320.1(a)(3).  General permits are issued for periods of no more

than five years.  33 U.S.C.A. § 1344.

Advance submission of specific plans, descriptions, locations, purposes or needs of anticipated projects are not required for general permit.  *Sierra Club v. U.S. Army Corps of Eng'rs*, 464 F. Supp. 2d at *1185.  Once proposed, however, the process for issuing a general permit is the same as that for an individual permit.  *Id*.  After the COE issues a general permit, an applicant seeking to discharge dredged or fill materials into the nation's waters can often immediately begin those activities without notice to or authorization from the COE.  *Id*.  The terms of a general permit may, however, require an applicant to notify the COE of proposed dredge or fill activities or to secure COE approval for such activities, which approval may be subject to the applicant's satisfaction of additional conditions set by the COE.  *Id*.

The term, "general permit," refers to both regional permits issued by district or division engineers on a regional basis and to nationwide permits (NWPs) which are issued by the Chief of Engineers through publication in the Federal Register and are applicable throughout the nation.  33 C.F.R. § 320.1(c); *see Marathon Dev. Corp.*, 867 F.2d at *98.  An activity is authorized under an NWP only if the activity and the permittee satisfy all of the NWP's terms and conditions.  33 C.F.R. § 330.1(c).  District and division engineers have been delegated discretionary authority to suspend, modify, or revoke authorization under a NWP.  33 C.F.R. § 330.1(d).  This discretionary authority may be used only to further condition or restrict the applicability of a NWP for cases where there is concern for the

aquatic environment under the § 404(b)(1) Guidelines of the CWA or for any factor of the public interest.  *Id*.  Because of the nature of most activities authorized by NWPs, district and division engineers will not have to review every such activity to decide whether to exercise discretionary authority.  *Id*.  Although the terms and conditions of certain NWPs require review of the proposed activity before the NWP will authorize construction, the COE has the discretionary authority to review any activity authorized by a NWP to determine whether the activity complies with the NWP.  *Id*.  If the COE determines that the proposed activity will have more than minimal individual or cumulative net adverse effects on the environment or may otherwise be contrary to public interest, the COE may modify the NWP authorization to reduce or eliminate those adverse effects, or instruct the prospective permittee to apply for a regional general permit or an individual permit.  *Id*.  However, in most cases, permittees may proceed with activities authorized by NWPs without notifying the COE.  33 C.F.R. § 330.1(e).

B.  Facts

Based on the administrative record, the undisputed facts are as follows.  On or about April 5, 2007, FTN Associates Ltd., a consulting firm, submitted a Request for Approved Jurisdictional Determination and Project Authorization under § 404 of the CWA (the request) to the defendant, the United States Army Corps of Engineers (COE) on behalf of the City of Bryant, Arkansas (the city).  The city sought authorization from the COE for the construction of a 106-acre recreational sports park to be known as Bishop Park.  The park would include

soccer fields, baseball fields, a water park, community center, and parking areas. The site for the park is located south of Boone Road and north of the Union Pacific Rail Line in Bryant, Saline County, Arkansas. Hurricane Creek (the creek) forms the site's eastern boundary.

In the request, FTN described the site as consisting primarily of improved pasture communities, and to a lesser extent, upland forested communities, riparian communities, and early successional communities. FTN informed the COE that small portions of the early successional wetland communities would be impacted by the park project. The COE was also informed that construction of the park would include filling and relocating an unmapped ephemeral channel exhibiting "an ordinary high water mark" and the filling of two "small low quality wetland areas" to accommodate the proposed baseball fields. FTN stated that it anticipated only minor impacts.

The request was accompanied by a September 2006 Delineation of § 404 issues (delineation) at the proposed park site. The delineation identified approximately 0.55 acres of potential § 404 wetlands at seven locations within the entire 106 acre site. It found that construction would only impact two of the seven wetlands areas, resulting in only 0.13 acres being impacted. It was also found that 300 feet of an ephemeral channel exhibiting an ordinary high water mark would be impacted.

The delineation indicated that a majority of the study area is mapped as Zone A3 on a Federal Emergency Management Agency 100-year floodplain map for Saline County. It

also indicated that the only section of the site not within the 100-year floodplain is the extreme southwest corner which consists of approximately 4.8 acres, in other words, 101.5 acres sit in the floodplain.

In an April 25, 2007 letter to FTN, the COE concurred in FTN's assessment that the site contains jurisdictional areas subject to regulation under § 404 of the CWA. The COE informed FTN that any work involving the discharge of dredged or fill material within the limits of the jurisdictional areas would require a § 404 permit prior to commencing work. FTN was also informed that the city's request was being reviewed for possible nationwide permit requirements.

On August 7, 2007, Anthony Lobred of the COE and Robert Stewart (the facts do not indicate if he was also with the COE) met onsite with defendant Richard Penn, the city engineer, to discuss mitigation opportunities that the city could use for the proposed impacts. During the meeting, Penn agreed to go before the city board to address placing an easement on the southern intermittent drain and establishing a buffer.

The city submitted its proposed compensatory mitigation to the COE on September 27, 2007. The city proposed: (1) preserving in perpetuity by deed restriction an existing intermittent channel; (2) establishing a 75 ft wide corridor that would include the variable width of the channel; and (3) establishing a walking trail on one side of the channel and providing identification signs for selected large trees along the trail.

Lobred would later write in the city's NPR/Nationwide/General Permits Checklist,

8

that he had at least two onsite pre-application meetings with the city and that during one onsite visit he discuss the city's options with Penn.  He states that Penn informed him that the city had taken care of all concerns involving the floodway.  Lobred also states that he talked to Penn and Dr. Gary Tucker of FTN about the avoidance and minimization of the proposed project and the mitigation required for the impacts.  Lobred concluded that one NWP 39 would cover the project.

The city was issued a verification of applicability of NWP 39 on October 10, 2007.  The city was informed that it was the city's responsibility to read and become familiar with the conditions of NWP 39 in order to ensure that the authorized activity complied with NWP 39.

NWP 39 provides, in relevant part:

> For the discharge of dredge or fill material into non-tidal waters of the United States for the construction or expansion of commercial and institutional building foundations and building pads and attendant features that are necessary for the use and maintenance of the structures.  Attendant features may include, but are not limited to, roads, parking lots, garages, yards, utility lines, storm water management facilities, and recreation facilities, such as playgrounds and playing fields.
>
>        * * *
>
> The permittee must submit a preconstruction notification to the district engineer prior to commencing the activity.

72 Fed. Reg. 11,188-89.  The relevant terms and condition of NWP 39 include the following:

> 9.  <u>Management of Water Flows</u>.  To the maximum extent practicable, the pre-construction course, condition, capacity, and location of open waters must be maintained for each activity, including stream

channelization and storm water management activities, except as provided below. The activity must be constructed to withstand expected high flows. The activity must not restrict or impede the passage of normal or high flows, unless the primary purpose of the activity is to impound water or manage high flows. The activity may alter the pre-construction course, condition, capacity, and location of open waters if it benefits the aquatic environment (e.g. stream restoration or relocation activities).

10. <u>Fills Within 100-Year Floodplains</u>. The activity must comply with applicable FEMA-approved state or local floodplain management requirements.

\* \* \*

20. Mitigation. The district engineer will consider the following factors when determining the appropriate and practicable mitigation necessary to ensure that adverse effects on the aquatic environment are minimal:

> (a) The activity must be designed and constructed to avoid and minimize adverse effects, both temporary and permanent, to waters of the United States to the maximum extent practicable at the project site (i.e., on site).

> (b) Mitigation in all its forms (avoiding, minimizing, rectifying, reducing, or compensating) will be required to the extent necessary to ensure that the adverse effects to the aquatic environment are minimal.

> (c) Compensatory mitigation at a minimum one-for-one ratio will be required for all wetland losses that exceed 1/10 acre and require pre-construction notification, unless the district engineer determines in writing that some other form of mitigation would be more environmentally appropriate and provides a project-specific waiver fo this requirement. For wetland losses of 1/10 acre or less that require pre-construction notification, the district engineer may determine on a case-by-case basis that compensatory mitigation is required to ensure that the activity results in minimal adverse effects on the aquatic environment. Since the likelihood of success is greater and the impacts to potentially valuable uplands are reduced, wetland restoration should be the first compensatory mitigation option considered.

* * *

     27.  Preconstruction Notification.  (a) <u>Timing</u>.  Where required by the terms of the NWP, the prospective permittee must notify the district engineer by submitting a pre-construction notification (PCN) as early as possible. ... The prospective permittee shall not begin the activity:

         (1) Until notified in writing by the district engineer that the activity may proceed under the NWP with any special conditions imposed by the district engineer;

* * *

     (d) <u>Agency Coordination:</u> (1) The district engineer will consider any comments from Federal and state agencies concerning the proposed activity's compliance with the terms and conditions of the NWPs and the need for mitigation to reduce the project's adverse environmental effects to a minimal level.

Projects authorized under NWP 39 also have an acreage limit of one-half an acre of non-tidal waters of the United States and are prohibited from discharges causing the loss of greater than 300 linear feet of stream bed.  This 300 linear foot limitation may be waived by the district engineer for intermittent and ephemeral stream beds.

     On or about March 3, 2008, plaintiff Ralph Hall reported to the COE that the city was filling a relief channel.  During his investigation into Mr. Hall's complaint, Lobred again called Penn.  Penn informed Lobred that the area in dispute was a practice field and that Hall had also contacted the city.  During the conversation, Penn also informed Lobred that the area had not had a "certain type of FEMA hydrologic test" and, as a result, work on the site was being stopped until the testing was finalized and showed that the construction would not

cause a "No Rise Evaluation."

As part of his investigation, Lobred visited the site on March 13, 2008.  He described the activity at the site as normal.  He found that the work at the site was in compliance with the general and special conditions of NWP 39.  He also found that the relief channel was not a jurisdictional water body as defined by § 404 of the CWA.  Lobred concluded that no further activity was required of his office.  On March 21, 2008, he called Hall to explain that the issue was a local issue and that Hall needed to contact Penn.  Hall disagreed with Lobred's findings.

## II.  LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact suitable for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, *247, 106 S. Ct. 2505, **2509-10 (1986); *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, *1541 (8th Cir. 1996); *Unlaub Co., Inc. v. Sexton*, 568 F.2d 72, *76 (8th Cir. 1977); *Camden County Council on Econ. Opportunity v. U.S. Dep't of Health & Human Servs.*, 563 F. Supp. 2d 262, *265 (D.D.C. 2008); *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 529 F. Supp. 2d 1110, *1117 (N.D. Cal. 2007).  A fact is material if the dispute over it might affect the outcome of the suit under the governing law.  *Computer Aided Design Sys., Inc. v. Safeco Life Ins. Co.*, 235 F. Supp. 2d 1052, *1056-57 (S.D. Iowa 2002).  When both sides have

moved for summary judgment there are no facts in dispute. *Id*.

In the context of summary judgment, an agency action is entitled to great deference. *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, *1246 (11th Cir. 1996); *see Titan Wheel Corp. of Iowa v. U.S. Envtl. Protection Agency*, 291 F. Supp. 2d 899, *907 (S.D. Iowa 2003).   Under the Administrative Procedure Act (APA), a court may set aside an agency action if the court determines that the action is arbitrary, capricious, an abuse of discretion, or not in accordance with the law. *Sierra Club v. Bosworth*, 510 F.3d 1016, *1022 (9th Cir. 2007); *Sierra Club v. U.S. Army Corps of Eng'rs*, 464 F. Supp. 2d 1171, *1181 (M.D. Fla. 2006). The arbitrary and capricious standard of review is a narrow one. *Falk v. U.S.*, 452 F.3d 951, *954 (8th Cir. 2006); *National Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 453 F. Supp. 2d 116, *123 (D. D.C. 2006). Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis. *Falk*, 452 F.3d at *954.  Something more than mere error is necessary to meet the test. *Id*.  To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case. *Id*. The agency need not exhaustively analyze every factor, but must base its determination upon factors listed in the appropriate regulations and must use a reasonable interpretation of the regulation and the statute in reaching its conclusion. *South Dakota v. U.S. Dep't of Interior*, 423 F.3d 790, *800 (8th Cir. 2006).

The focal point for judicial review of an administrative agency's action is the administrative record. *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d at *1246; *National Wildlife Fed. v. Harvey*, ___ F. Supp. 2d ___ (E.D. Ark. Aug. 8, 2008); *Sierra Club v. U.S. Army Corps of Eng'rs*, 464 F. Supp. 2d at *1182. The role of the court is not to conduct its own investigation and substitute its own judgment for the administrative agency's decision. *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d at *1246; *see Arkansas Wildlife Fed. v. U.S. Army Corps of Eng'rs*, 431 F.3d 1096, *1100 (8th Cir. 2005). Rather, the task of the reviewing court is to apply the appropriate standard of review to the agency decision based on the record the agency presents to the reviewing court. *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d at *1246. If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. *Id*; *see also Newton County Wildlife Ass'n v. Rogers*, 141 F.3d 803, *808 (8th Cir. 1998).

Certain exceptions, however, have been carved from the general rule limiting APA review to the administrative record. *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, *766 (8th Cir. 2004). These exceptions apply only under extraordinary circumstances, and are not to be casually invoked unless the party seeking to part from the record can make a

strong showing that the specific extra-record material falls within one of the limited exceptions. *Id*. Extra-record material is only permitted (1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision; (2) when the agency has relied on documents not in the record; (3) when supplementing the record is necessary to explain technical terms or complex subject matter; and (4) when the plaintiffs make a showing of agency bad faith. *Wildwest Inst. v. Castaneda*, 462 F. Supp. 2d 1150, *1156 (D. Mont. 2006). Consideration of extra-record materials to determine the correctness or wisdom of the agency's decision is not permitted. *Center for Biological Diversity v. Fed. Highway Admin.*, 290 F. Supp. 2d 1175, *1200-01 (S. Cal. 2003).

### III.  DISCUSSION

A.  <u>Motion to Strike</u>

In support of their motion for summary judgment, plaintiffs have included: (1) portions of Penn's deposition testimony; (2) portions of Dr. Shawkat Ali's deposition testimony; (3)  a letter written by Penn to the mayor; (4) a copy of a city ordinance; and (5) portions of Michael Borengasser's deposition testimony.  Plaintiffs assert that this extra-record material is necessary because the COE failed to make findings on the critical issue of whether it considered and complied with its obligations regarding the development in the floodplain, there was inadequate development of the administrative record, and inquiry into facts outside the record is necessary to explain what is in the record.

After careful review of the extra-record material, the court finds that the material

offers little assistance in understanding the record before the court.  Moreover, the material does not establish what facts the COE considered or failed to consider.  At best, the material raises the question of whether the COE's decision was wise.  For these reasons, the federal defendants' motion to strike extra-record material is granted.

## B.  The Merits

Plaintiffs advance the following arguments in support of their motion for summary judgment:  (1) The COE was arbitrary and capricious in failing to comply with the requirements of Executive Order 11,988; (2) the COE acted arbitrarily and capriciously in issuing the NWP 39 verification when it failed to investigate and determine whether the fill at the site would comply with or violate FEMA regulations after being advised that all but 4.8 acres of the site was located in the 100-year floodplain; and (3) The COE acted arbitrarily and capriciously in its investigation of plaintiff Ralph Hall's complaint that the city was violating general conditions 9 and 10 of NWP 39.

1.   Whether the COE's failure to comply with the requirements of Executive Order 11,988 was arbitrary and capricious.

Executive Order 11,988 was issued in May 1977, in part to avoid the direct or indirect support of floodplain development whenever there is a practicable alternative.  *Cape May Greene, Inc. v. Warren*, 698 F.2d 179, *189 (3d Cir. 1983); *Watershed Assocs. Rescue v. Alexander*, 586 F. Supp. 978, *986 (D. Neb. 1982).  The order was based on the National Environmental Policy Act (NEPA), the National Flood Insurance Act of 1968, and the Flood Disaster Protection Act of 1973.  *Cape May*, 698 F.2d at *189.  The order requires federal

agencies taking action in or affecting a floodplain to think twice. *City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, *1166 (9th Cir. 1997). The agency must consider the project's effects on the floodplains and possible alternatives, and may proceed only if it finds that the only practicable alternative requires sitting in the floodplain. *Id*. The order also requires agencies to provide an opportunity to the public and interested agencies to comment on proposed projects. *Watershed Assocs.*, 586 F. Supp. at *986.

The court begins by first addressing what has become the recurring theme throughout this case, which is whether the plaintiffs have a private right of action. This question has arisen at least three times in the Eighth Circuit. In *Watershed Associates Rescue v. Alexander*, 586 F. Supp. 978, (D. Neb. 1982), the court stated that it was not inclined to find that Executive Order 11,988 was intended to create a private right of action. *Id.* at *987. The court found that the order does not expressly grant such right and that the express terms of the order only provide for a reporting requirement by each federal agency to the Council on Environmental Quality and the Water Resource Council and for a periodic evaluation of agency procedures under the order and their effectiveness by the Water Resources Council. *Id*. at *987. The court in *Watershed* would go on to hold that, under relevant, Eighth Circuit precedent, the order lacks the force and effect of law and was, thus, not judicially enforceable. *Id*. at *987-88.

The cases since *Watershed* have failed to address this issue. In *Olmsted Citizens for a Better Community v. U.S.*, 606 F. Supp. 964 (D. Minn. 1985), the court held that the issue

17

was debatable but went on to find that the government had complied with the provisions of the order. *Id.* at *980. In *Great Rivers Habitat Alliance v. U.S. Army Corps of Engineers*, 437 F. Supp. 2d 1019 (E.D. Mo. 2006), the court dismissed the case on other grounds and declined to address the issue. *Id*. at *1035 n. 37. Courts in other circuits have, however, held that although Executive Order 11,988 does not create a private right of action, the order is subject to judicial review under the APA. *See City of Carmel-By-The-Sea*, 123 F.3d at *1166; *Daingerfield Island Protective Soc'y v. Babbitt*, 823 F. Supp. 950, *960-61(D.D.C. 1993).

In light of Eighth Circuit precedent, the court finds that Executive Order 11,988 does not confer upon the plaintiffs a private right of action. Even if the court were to find that plaintiffs have a private right of action, the court does not find that the COE's decision was arbitrary and capricious.

Plaintiffs assert that the COE failed to comply with sections 2(a)(1) and (2) of the order in that there is no evidence in the Administrative Record that: (1) alternatives to development of the park project in the floodplain were ever proposed to or considered by the COE; (2) the COE designed or modified its action in order to minimize potential harm to or within the floodplain; (3) the COE prepared and circulated a notice containing an explanation of why the park is proposed to be located in the floodplain; and (4) the COE provided an opportunity for public review and comment upon the park proposal.

The federal defendants respond that the COE was not required to consider offsite

practical alternatives before verifying the applicability of a general permit and directs the court's attention to the Decision Document for NWP 39 found in the Administrative Record. Section 2.0 titled "Alternatives" states that consideration of offsite alternatives does not apply to projects authorized by general permits. [Decision Document at 6.] Section 2.4 further states that offsite alternatives cannot be considered for activities authorized by NWPs. [Decision Document at 9.]

The record before the court reveals that during an onsite visit, Lobred discussed the city's options with Penn. [Checklist at 1.] The court, therefore, finds that alternatives were considered and discussed.

In response to the plaintiffs' assertion that the administrative record is void of evidence showing that the COE designed or modified its actions in order to minimize potential harm to or within the floodplain, the federal defendants state that several of the general conditions for NWP 39 are geared toward guaranteeing minimal adverse effects on floodplain values.  They again direct the court's attention to the Decision Document which provides:

5.1 Public Interest Review Factors (33 CFR 320.4(a)(1))

(i) Floodplain values: Activities authorized by this NWP may affect the flood-holding capacity of the floodplain, as well as other floodplain values. ... In many cases, compensatory mitigation will be required for activities authorized by this NWP, which will offset losses of waters of the United States and provide water quality functions and wildlife habitat.  General condition 20 requires avoidance and minimization of impacts to waters of the United Statues to the maximum extent practicable at the project site, which will reduce losses of floodplain

values.  The mitigation requirements of general condition 20 will help
ensure that the adverse effects of these activities on floodplain values
are minimal.  The requirements of general condition 10 will minimize
adverse effects to the flood storage capacity of 100-year floodplains.
Compliance with general condition 9 will also ensure that activities in
100-year floodplains will not cause more than minimal adverse effects
on flood storage and conveyance.

The federal defendants point out that in the city's proposed compensatory mitigation,

the city proposed including an existing intermittent channel in a linear green space corridor

that would "promote water quality by acting as a filter strip to prevent sedimentation from

surface runoff into the stream channel."  Additionally, the record reveals that the COE

discussed avoidance and minimization with the city and the mitigations required for impacts.

[Checklist at 1 and 2.] The record also reveals that in addition to the proposed mitigation,

mitigation was also performed on the configuration of the sports complex. [*Id*. at 1.]

In their response to the plaintiffs' assertion that the COE violated the order by failing

to give the public notice of the proposed park project and by failing to provide an opportunity

for public review, the federal defendants state that the COE provided the requisite notice and

opportunity for comment prior to issuance of NWP 39.  Individual permits that are proposed

for authorization under a NWP are not given a permit but a verification or authorization that

the project complies with a NWP.  72 Fed. Reg. 11,150.  Public comments on specific

projects authorized under NWPs is not required.  *See id*.

The COE has stated that one of its bases for determining that the activities authorized

by NWP 39 will have minimal impacts is that the activities must also be authorized under a

permit issued under the Surface Mining Control and Reclamation Act (SMCRA). *Id.* Each SMCRA permit action includes a public participation process, thus giving the public the opportunity to comment on each individual project authorized under NWP 39. *Id.* Furthermore, under the general permit scheme, notice and review occur prior to the issuance of the general permit. Once the COE determines that an activity is authorized by a NWP it is not required to conduct a separate public interest review for every individual activity that seeks to proceed under a NWP.

The federal defendants also state that when the COE published its proposal to reissue NWP 39, comments were solicited and the public was permitted to request a public hearing. *See* 71 Fed. Reg. 56,258 and 56,271. They point out that the COE received comments pertaining to activities that may impact water flows and floodplain values.

Based on the administrative record presently before the court, the court finds that the COE did not act arbitrarily and capriciously and that it complied with the requirements of Executive Order 11,988. The administrative record reveals that alternatives were considered and that mitigation was performed to minimize the harm to or within the floodplain. Furthermore, once the COE approved NWP 39, it is not required to conduct a second round of public notification and review for each individual project that meets the specifications for verification under NWP 39.

 2.   <u>Whether the COE's was arbitrary and capricious in its decision to issue the NWP 39.</u>

General condition 10 provides that activity must comply with applicable FEMA-

approved state or local floodplain management requirements.  Plaintiffs now argue that the COE was arbitrary and capricious in its failure to get written assurances that the floodplain and floodway issues were being addressed as required by FEMA regulations before validating the applicability of NWP 39 for the park site.   In support of this argument plaintiffs submitted extra-record materials that question the wisdom of the COE's decision. The court takes this time to reiterate that consideration of extra-record material in determining the wisdom of the COE's decision is not permissible.  *Center for Biological Diversity*, 290 F. Supp. 2d at *1200-01.

As to the COE's failure to get written assurances, documentation of compliance with FEMA-approved standards is unnecessary for the purpose of NWPs.  72 Fed. Reg. 11,157. This is because such a requirement is more appropriately addressed through state and local construction of authorizations.  *Id*.  General condition 10 simply requires permittees to comply with applicable FEMA-approved state or local floodplain management requirements, it does not require that separate documentation be provided to the COE with a pre-construction notification.  72 Fed. Reg. 11,157 and 11,158.

The record before the court reveals that, during an onsite visit, the COE received a verbal assurance that all concerns had been taken care of that involved the floodway.  The federal defendants state that it was reasonable for the COE, to rely on this verbal assurance. The federal defendants also state that site visits occurred, meetings were twice held with the city's engineer where on-site avoidances, minimizations, and compensatory mitigation were

discussed, and that floodplain and floodway issues were assessed.  The administrative record confirms that all of this occurred.

The COE was not required to obtain written assurances that the floodplain and floodway issues were being reasonably addressed.  Accordingly, the COE's decision to issue the city a verification under NWP 39 was not arbitrary and capricious.

   3.   <u>Whether the COE was arbitrary and capricious in its investigation of plaintiff Ralph Hall's complaint that the city was violating general conditions 9 and 10 of NWP 39.</u>

Lastly, plaintiffs allege that the COE was arbitrary and capricious in its investigation of the complaint that general conditions 9 and 10 were being violated.  General condition 9 provides in relevant part that "the activity must not restrict or impede the passage of normal high flows, unless the primary purpose of the activity is to impound water or manage high flows."  General condition 10 provides that the activity must comply with applicable FEMA-approved state or local floodplain management requirements.

On March 3, 2008, plaintiff Ralph Hall reported that the city was filling one of the creek's relief channels.  During its investigation into the complaint, the COE learned that a "certain" hydrologic test had not been performed.  The COE was informed that work on the project was being stopped until the testing was completed and showed that the activity would not cause a "no rise evaluation."  The COE also performed a site visit.  During the site visit, it was found that the activity at the site was in compliance with the general and special conditions of NWP 39.  It was also found that the relief channel was not a jurisdictional

water body as defined by § 404 of the CWA.

Plaintiffs assert that the administrative record indicates, by the absence of information to the contrary, that in its investigation the COE never obtained, requested, or reviewed any of the local FEMA-approved floodplain ordinances; never obtained, requested, or reviewed any floodplain impact analysis; and never consulted with anyone knowledgeable about floodplain regulations. The federal defendants respond that the plaintiffs' argument must be rejected in its entirety because their assertions rest on facts and events that occurred six months after the COE verified the applicability of NWP 39.

The court's review is limited to the administrative record before the COE at the time it made its decision. *See Alaska, Dep't of Envtl. Conservation v. U.S. Envtl. Prot. Agency*, 244 F.3d 748, *751 (9th Cir. 2001); *Bayou Des Familles Dev. Corp. v. U.S. Corps of Eng'rs*, 541 F. Supp. 1025, *1037 (E.D. La. 1982). An agency's decision not to take enforcement action is presumptively a decision committed to agency discretion by law and, therefore, is not subject to judicial review. *Giacobbi v. Biermann*, 780 F. Supp. 33, *37 (D.D.C. 1992). Deciding which claims are facially without merit, which claims merit investigation, and the level of investigation desirable, are all enforcement-related decisions. *Id*. Absent a law constraining an agency's discretion in making these decisions, determining the manner in which the agency conducts an investigation is part of the enforcement action committed to agency discretion. *Id*.

In order to remove this issue from the presumption of non-reviewability, plaintiffs

must demonstrate that there is law to apply which limits the agency's enforcement discretion. *Id*. The law identified must limit the agency's discretion in a meaningful manner. *Id*. Plaintiffs fail to identify such a law. The court, therefore, finds that the COE did not act arbitrarily and capriciously in its investigation into the complaint that the city was violating general conditions 9 and 10 of NWP 39.

## IV. CONCLUSIONS

Based on the administrative record before the court, the court finds that: (1) the COE complied with the requirements of Executive Order 11,988; (2) that the COE's decision to issue the city a verification under NWP 39 was not arbitrary and capricious; and (3) the COE's investigation into the complaint that the city was violating general conditions 9 and 10 of NWP 39 was not arbitrary and capricious. Accordingly, plaintiffs' motion for summary judgment [Doc. #36] is denied and federal defendants' motions to strike extra-record material [Doc. #46] and for summary judgment [Doc. #44] are granted.

Finding that there are no federal claims remaining, the court declines to exercise its supplemental jurisdiction over the remaining state law claims. The plaintiffs' state-law claims are dismissed without prejudice and all pending motions are denied as moot.

IT IS SO ORDERED this 24th day of November 2008.

_____
UNITED STATES DISTRICT JUDGE